ALBERT N. TODD and WILLIAM H. OSCANYAN, Composing the Firm of L. FEUCHTWANGER & COMPANY, Respondents, v. JAMES GAMBLE and Others, Composing the Firm of PROCTER & GAMBLE, Appellants.

*Sale of goods by executory contract — refusal of the vendee to accept the goods — measure of damages — market value — cost of production.*

When the vendee in an executory contract of sale refuses to accept the goods, the measure of his liability is the difference between the contract price and the actual value of the goods, which latter is deemed to be the market value of the goods, if they have any; if the goods have no market value, their actual value must be ascertained in some other way, as, by showing the cost of production.

Before the difference between the cost of production and the contract price can be applied as the measure of damages, in an action brought to recover damages for the vendee's failure to accept goods under an executory contract, the burden is upon the plaintiff to show that the article had no market value, and when the evidence is conflicting, this is a question of fact for the jury and not one of law for the court.

In an action brought by the vendor to recover damages for the vendee's failure to accept silicate of soda under an executory contract of sale, *held*, that, on the case presented, it was not error for the trial court to refuse to hold as matter of law that silicate of soda had a market value, and that the question whether or not it had a market value was properly submitted to the jury.

APPEAL by the defendants, James Gamble and others, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the city and county of New York on the 16th day of March, 1893, upon a verdict rendered at the New York Circuit, and also from an order denying the defendants' motion for a new trial made upon the minutes.

This action was brought to recover damages for defendants' failure to receive and pay for silicate of soda to be manufactured and delivered under an executory contract in writing, as follows:

"*March 1st,* 1887.

"We hereby agree to furnish Procter & Gamble whatever quantities of Silicate of Soda they will require to use in their factories during one year from date, the same to be of our regular standard make, and as per price and terms annexed:

"Price, $1.10 per 100 lbs., F. O. B. in New York.

"Terms cash in 60 days.

"Barrels returnable at 80c. each, delivered in good condition at R. R. Depots in N. Y.

"Messrs. Procter & Gamble reserve the right to use such amounts of English Silicate as is necessary in their business, to which we agree.

"L. FEUCHTWANGER & CO.,

"per GEO. B. LINCOLN, Jr.

"PROCTER & GAMBLE."

Under this contract the plaintiffs delivered a certain quantity of the silicate between March 1 and April 22, 1887, upon which latter date the defendants notified the plaintiffs that no more silicate of soda would be received under the contract. It was conceded on the trial that between the date last mentioned and March 1, 1888, the defendants purchased from other manufacturers and used in their business, 1,582,468 pounds of American silicate of soda.

*Frederic R. Kellogg,* for the appellants.

*Albert Boardman,* for the respondents.

O'BRIEN, J.:

It being conceded that defendants are liable for a breach of the contract, the questions presented upon this appeal relate to the

measure of damages and the competency of evidence admitted or excluded upon the trial.

On the former appeal in the same case before this court (67 Hun, 38), we held, that when an executory sale is made of articles having a marketable value, which the vendee refuses to accept, the measure of his liability is the difference between the contract price and their actual value, which the law deems equivalent to their value in the market. But if the subject of the sale has no market value, the measure of the vendee's liability is still the difference between the contract price and the actual value of the goods, the actual value being a factor in each case in determining the question of damages. When the value of the article cannot be determined by what it will sell for in the market, it must be ascertained in other ways, sometimes by showing the cost of production.

It appearing upon the former trial that there was a question as to whether or not the commodity had a market value, the judgment was reversed because the trial judge had held as a matter of law that the article was without a market value, and permitted damages to be measured by the difference between the cost of production and the contract price. We also held that before the latter measure of damages could be applied, the burden was upon the plaintiff to show that the article had no market value, and that upon conflicting evidence this was a question of fact for the jury, and not one of law for the court.

In addition to what formerly appeared, we have on the part of the defendants the testimony of a witness in substance to the effect that he was a member of a firm that dealt in silicate of soda; that the firm bought it from manufacturers and sold it to consumers, and that it kept a stock on hand of from fifteen to thirty barrels, which it sold mostly to soap makers. This, together with other testimony presented here, as upon the former appeal, by defendants, was to off-set the testimony offered by plaintiffs tending to prove that there was no market value for the commodity.

It is insisted upon this appeal that in the present state of the record it was error not to hold as a matter of law that silicate of soda had a market value. We do not think it necessary to add anything to our former opinion on this subject, further than to say that we think the disposition made by the trial judge was correct.

Though not acquiescing in this view, but assuming that it is right, the appellants further contend that the court's charge at the plaintiffs' request, that "in such an action the usual measure of damages is the difference between the contract price and the cost of production," is reversible error. This position we do not regard as tenable, because the court in its main charge had very fully presented to the consideration of the jury the question as one for their determination as to whether there was or was not a market value for the silicate; and the jury could not have understood this instruction, presented by the court at plaintiffs' request, otherwise than as a rule to guide them in the event of their determining that there was no market value. If the defendants had desired to avoid any confusion, they should have called the court's attention to the fact that such a rule was applicable only where there is no market for the goods. The jury having found, however, that there was no market value, the instruction or request was a presentation of a mere abstract question of law, which did not mislead the jury and could not have injured the defendants, and would not, therefore, be proper ground for reversing a judgment in other respects valid.

It is further claimed that the verdict is excessive. The learned court charged the jury:

"The plaintiffs, however, were obliged in their contract to make an allowance for barrels returned. Mr. Oscanyan says that, in the 40 cents which he computed as the cost of producing this article, those barrels are put in at 76 cents. Should you come to the conclusion that there was no market value, and that the plaintiffs are entitled to recover the difference between the cost of the production and the contract price, you will allow the defendants a deduction of four cents upon the number of barrels which were called for by the 1,582,468 pounds, which has been stated by General Tracy, and, I suppose, is conceded to be 2,877 barrels or thereabouts."

The defendants excepted to this charge, and it presents the question whether, in estimating the rebate, the defendants should have been allowed for the barrels eighty cents, or merely the difference between seventy-six and eighty cents, as charged by the court.

It was shown that a barrel would hold 550 pounds of silicate of soda, that the cost of production was forty cents a hundred weight or two dollars and twenty cents per barrel, and that in this was

included seventy-six cents as the cost of the barrel. By following the instructions of the court, the jury would proceed to a computation of plaintiffs' damages as follows:

Contract price per barrel: 550 pounds at $1.10 per cwt. $6.05.

| | | |
|---|---|---|
| Contract price of 2,877 bbls. at $6.05............. | $17,405 | 85 |
| Cost of production of 2,877 bbls. at $2.20 ......... | 6,329 | 40 |
| Difference............................... | $11,076 | 45 |
| Allowance to drafts on 2,877 bbls. of 4 c. per bbl.... | 115 | 08 |
| Amount of plaintiffs' damages............... | $10,961 | 37 |

That this is the correct result becomes clear if we take a single barrel of silicate and determine, under the terms of such a contract as the one under consideration, what would be the difference between the cost of production and the selling price:

| | | |
|---|---|---|
| Contract price per barrel........................... | $6 | 05 |
| Cost of production including barrel (550 lbs. at 4 c.)..... | 2 | 20 |
| Difference...................................... | $3 | 85 |
| Allowance to defendants for return of barrel ........... | | 80 |
| Plaintiffs' money profit, per barrel ................ | $3 | 05 |

This leaves the transaction with plaintiffs in possession of their money profit of three dollars and five cents and the returned barrel, which latter article they are entitled to have turned into its money value and added to their profit on the barrel's contents. The only evidence showing the value of a returned barrel is that furnished by the contract, in which plaintiffs agree to a valuation of eighty cents. But, as one of the plaintiffs testified, it only cost seventy-six cents originally; it is fair to say it was worth no more after use. Adding then seventy-six cents as the value of the returned barrel to plaintiffs' profit on the contents of the barrel, makes three dollars and eighty-one cents per barrel as the sum for which plaintiffs would be entitled to recover. There being 2,877 barrels, this number multiplied by three dollars and eighty-one cents gives $10,961.37 as the amount due the plaintiffs — which is the same amount as that arrived at by following out the instructions of the court. The ver-

·dict in the case was $10,692.19, or $269.18 less than the jury would have been justified in allowing under the ruling of the court. The charge, therefore, on this subject does not present error as against the defendants.

This consideration, throwing out the difference between what the jury would have been entitled to assess and what in fact they did .assess, equally disposes of many of the other objections urged upon our attention. Thus is answered the suggestion that it was reversible error to permit testimony concerning conversations between the parties preceding the written contract, and concerning the original ·and increased capacity of the plaintiffs' plant before and after the making of the contract, together with any evidence as to the capacity of plaintiffs' plant previous to the making of the contract and the fact that subsequent thereto its capacity was increased. Though it would appear that such testimony was either incompetent ·or immaterial, it is shown by the result arrived at by the jury that no injury was done thereby to the defendants.

Another error assigned is, that in violation of the rule relating to ·damages, the plaintiffs' testimony purported to average the price ·of the various elements entering into the cost of production during the whole contract year, and did not specify the price as of the time when the breach occurred. This objection was presented upon .a motion to strike out the testimony which had been given by the plaintiffs' witness as to the cost of production, and when the motion was made the plaintiffs' counsel in answer thereto offered to fix the cost as of the twenty-second of April, the date of the breach, and to further prove that the price remained so throughout the year. Instead, however, of defendants electing to fix upon a date when the damages should be estimated as of that time, their counsel remained silent, standing upon his strict legal right to have his motion to strike out granted or denied, to the denial of which motion he excepted.

We do not think that this exception is good. The plaintiffs, upon their theory as to how the damages were to be estimated, averaged the cost of production throughout the year and presented testimony showing such cost. Thereafter the defendants, having presented the question that this mode was not the proper one, were met by the offer of the plaintiffs' counsel to conform to their view

as to fixing the date and to correct the proof, but the defendants seemed more anxious to get a bad exception than to get evidence as to the true measure of damages.

It is further insisted that the jury in estimating the cost of production of the article failed to include any portion of the fixed charges by way of loss of interest, taxes, insurance, etc., upon the value of the plant at which the commodity in question was manufactured. It does appear that upon cross-examination the defendants elicited the fact that the total business of the plaintiffs during the contract year in question was about $200,000, of which the silicate of soda contracted to be sold to these defendants would have equaled the sum of about $17,000 ; and from this the argument is adduced that seventy-two-hundredths of the fixed charges should have been allowed by the jury. It thus appears that what items were included and what excluded in fixing the cost of production were before the jury, and that the amount awarded was less than the full amount based upon multiplying the cost of producing a single barrel by the total number of barrels provided for in the contract, and we cannot, therefore, say that the jury did not make some allowance for this item of fixed charges in arriving at their verdict.

The appellants' further contention that the court erred in excluding defendants' cross-examination as to the total annual profits of the plaintiffs' firm is not entitled to much weight, because the extent to which cross-examination shall be allowed is within the discretion of a trial judge ; and where, as here, such discretion was exercised for the purpose of preventing what would have been practically an accounting with respect to plaintiffs' business, it was proper for the court to prevent the cross-examination exceeding the legitimate bounds.

We think, therefore, that the judgment was right and should be affirmed, with costs.

VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment affirmed, with costs.